# STRAFFORD,

## JANUARY TERM, A. D. 1857.

---

## CURRIER *v.* BOSTON & MAINE RAILROAD.

To render the declarations of a party evidence in his own favor, as part of the *res gestæ*, the act to which the declarations relate must be material as evidence in support of the matter in controversy, and not merely material as constituting the foundation of the claim set up in the suit.

Where the point in controversy was whether the line established for a railroad had been changed by the corporation after they had contracted with the plaintiff to grade it, an offer to prove how the road was to be graded, stated in those terms, was properly rejected, it not appearing that the evidence offered would tend to show where it was to be done.

What *hard pan* is, and whether any was found in excavating, are not questions relating to a matter of science, art or skill; and it is not necessary that a witness should be shown to be qualified as an expert before he can be thus interrogated.

A memorandum in the hand-writing of an agent or servant of a corporation, upon the back of a receipt given to the corporation for money paid on account of a contract, to which the memorandum relates, cannot be presumed to have been upon the paper at the time of giving the receipt, and is of itself no evidence against the party signing the receipt.

An objection to evidence will not be considered by this court on a case made and reserved, or on exceptions allowed, as having been taken on the ground that it was to prove the contents of a writing, unless it is so stated.

Whatever is necessary to be done in order to accomplish the work specifically set forth in a contract, as agreed to be performed, is parcel of the contract, though not specified.

ASSUMPSIT, for work and labor performed in grading the defendants' railroad, in North Andover, Mass.

It appeared in evidence that the plaintiff graded for the defendants a portion of their railroad, beginning at station 0, and extending to station 100. The defendants contended that the work was done under a written contract, in and by which the plaintiff agreed to " perform and complete the work of grading the easterly division of the new portion of the railroad about to be built between Andover bridge and a point in the present railroad, about two thousand feet easterly of Sutton's factory, and extending westerly to station 100, easterly of the road leading from Andover bridge to Salem." The contract contained no other description or designation of the line of the road to be graded, nor of the work to be done. It provided that the work was to be done under the direction and to the approval and acceptance of the engineer of the railroad, and that the defendants should pay for performing and completing the work at the rate of fourteen cents per cubic yard for all earth worked, to be measured in excavation.

The plaintiff contended that after the contract was made the defendants changed the line of the road between stations $91\frac{1}{2}$ and 100, and that thereby he was absolved from the contract; and having graded the new line substituted for the original, from station $91\frac{1}{2}$ to station 100, he was entitled to recover upon a *quantum meruit* for the whole work. The change of the line was denied by the defendants, and evidence on that point was introduced by both parties. The plaintiff claimed that the line, as established at the time of making the contract, extended from station $91\frac{1}{2}$ to a flag staff in the plain, where, as he contended, was station 100. The defendants claimed that the line, as established at the making of the contract, was that graded by the plaintiff, running from station $91\frac{1}{2}$ to a point in the swamp, where there was a deep fill, at which point the defendants claimed station 100 to be. To make the fill in the swamp up to station 100, as claimed by the defendants, it was necessary to fill in on the line of the road beyond that station to a sand hill, about seven hundred feet distant, for the purpose of obtaining material from the sand hill with which to make the fill, and this was done by

the plaintiff, he thereby in fact grading up about seven hundred feet of the defendants' road beyond that portion specified in the contract, and agreed to be graded by him.

The plaintiff offered in evidence his own declarations, made at the time he commenced work on the sand-hill, to the effect that his work there was in consequence of the change of the location, as tending to prove that such change was made; but they were excluded by the court. The plaintiff introduced a witness, who testified that the chief engineer of the railroad offered to let to him the grading of that portion of the road afterwards taken by the plaintiff; and it was then proposed to prove by the witness the statements of the chief engineer, showing how he said that portion of the road was to be built, as tending to show how the contract was afterwards made with the plaintiff; and this evidence was also excluded by the court.

The deposition of Henry Bacon, introduced by the defendants, contained the following questions and answers: "*Interrogatory* 27. State whether or not said Currier ever made any claim or presented any account to you, or to the Boston and Maine Railroad, for extra compensation for work done on the job? If yea, when did he present or make it, and to whom? What was its amount, and what was it for? Was any of it allowed, and if so how much? Was the allowance paid? State whether or not, at the time of making such claim, he said any thing in reference to his contract, and if so what did he say? *Answer.* He did make claim for such extra compensation, after I gave him notice to present all claims for extra work. He then presented his claim to me. This was during the progress of the work. I do not recollect the amount of the claim, and cannot say what the claim was for, without reference to notes and memoranda, not now in my possession. A part of the claim was approved and allowed by me, and I think it was paid by the company. He claimed that it was extra work, which he was not obliged to do by his contract. I cannot recollect his precise words, but the above is the substance of his statements."

"*Interrogatory* 28. State whether you know what hard pan

is, and if yea, whether or not there was any hard pan in the excavation in any part of the work done by Currier."

"*Answer.* I know what hard pan is. There was on that portion of the road on which Currier worked some hard excavations, but nothing approaching the nature of hard pan."

The last sentence of the answer to the twenty-seventh interrogatory was objected to as incompetent, and the twenty-eighth interrogatory was excepted to, as leading, and as calling for the opinion of the witness as an expert; but they were admitted by the court.

The defendants introduced a paper, purporting to be the final estimate of the work on the plaintiff's job, made by the company's resident engineer, and proved by his testimony to be correct. On the other side of the paper was a receipt, signed by the plaintiff, for money paid him by the defendants on account of the job. The plaintiff objected to the memorandum, for the reason that it did not appear to have been made or approved by the chief engineer, and was not shown to have been assented to by the plaintiff; but it was admitted by the court.

The plaintiff contended that he was entitled to recover upon the *quantum meruit* for the work done in filling up on the line of the railroad between the sand hill and station 100, whether there had been a change of the line of the road or not. The court instructed the jury that unless they believed there had been a change of the line, as the earth by the contract was to be measured in excavation, the plaintiff was entitled only to the contract price for this portion of the work. The jury returned a verdict for the defendants, which the plaintiff moves to set aside.

*Christie & Kingman,* for the plaintiff.

1. The declarations of the plaintiff should have been received. It is admitted that the sand hill was seven or eight hundred feet beyond that portion of the road which the plaintiff agreed to build, lying across and beyond a deep swamp, and requiring a very large embankment to be made in order to connect the road at station 100 with the sand hill. When the plaintiff left the

section of road which he had contracted to build, and began a heavy work far down an adjoining section, he could not be supposed to be at work under the contract already made. The act, therefore, was admissible in evidence for the plaintiff, and of necessity, his declarations made at the time, showing the design or intention of the act.

" In all cases where a person's acts are evidence for him, his declarations in relation to such acts must necessarily be admitted." 1st Cow. and Hill's Notes to Phil. Ev. 592 ; *Doe* v. *Arkwright*, 5 Carr. & Payne 575. " Conversations or declarations, made by the actor or party concerned, at the time an act is done, and which explain the *quo animo* and design of the performance, may, whenever the nature of the act is called in question, be given in evidence as part of the *res gestœ.*" The rule regarding *res gestœ* declarations to be received as evidence, is a necessary and very useful one. *Sessions* v. *Little*, 9 N. H. 271 ; 1 Greenl. Ev. 120.

2. The point in controversy was, whether it was originally intended and agreed that the end of the plaintiff's section, next Lawrence depot, was to be built by throwing up the earth from the sides of the embankment, which could have been done for six cents per cubic yard, or whether it was to be built from the sand bank, which cost twenty-five cents per cubic yard, in addition to the construction of the long embankment across the swamp, and as having a direct tendency to show what the original design of the defendant was in relation to the method of constructing the road. We offered to show, by a witness who went and examined the work with the chief engineer, with the view of taking the same contract which the plaintiff took, how the chief engineeer then said the work was to be done. And we contend that the public letting of a grading contract by a railroad company necessarily requires that the character of the work should be previously decided upon in its minutest details ; and that it is to be presumed that the chief engineer, when showing the work to the various applicants for the contract, and explaining how it was to be done, merely stated what had been

determined on by the defendants in relation to the work; and that he would not show one contractor one place, and one method of building the road, and then immediately let the work to another contractor to be done in another place and in another manner. *Peyton* v. *St. Thomas's Hos.*, 3 Carr. & Payne 363; 1 Cow. & Hill's Notes to Phil. Ev. 181. An agent is authorized to act, and therefore his acts, explained by his *declarations* during the time of action, are obligatory on the principal. 1 Cow. & Hill's Notes to Phil. Ev. 169.

3. We contend that the interrogations and answers excepted to by the plaintiff in Bacon's deposition, are clearly inadmissible, for the reasons stated in the case. The deposition was taken *ex parte*, or such exceptions would never have been reserved by the court. It must be understood that the claim spoken of in the answer to the 27th interrogatory was presented in writing, and that answer is objectionable on that ground.

4. By the written contract, the parties made the chief engineer the umpire to decide on the character of the work — to measure the work done — and in a certain contingency to declare the contract determined, and the amount then due the plaintiff forfeited. Clearly, none of these things could be done by any other engineer, so as to bind either party. And a measurement by some other engineer could not, therefore, bind the plaintiff, unless assented to by him.

5. But whatever view the court may take of the previous points, they can not, we conceive, find a justification for the ruling on the last exception raised in the case.

The plaintiff contracted to build only to station 100. He did actually build seven or eight hundred feet further on the line of the road — an embankment, twelve or fifteen feet high — across a swamp, which cost him twenty-five cents per cubic yard. In what possible way can it be said that he is bound to take the same price for that work that he had for doing the work included in the written contract?

The fact that the parties did not see fit to include this part of the work within the written contract, is a satisfactory answer to

the claim now made by the defendant, to pay only the contract price for work costing nearly twice that sum.

Some new contract or agreement must have been made by the parties in relation to the work beyond station 100 ; but as none is shown, the plaintiff is entitled to what it is reasonably worth. The within contract cannot be extended over the adjoining section, or any part of it, as to any of its stipulations.

*Wheeler*, with whom was *Wells*, for the defendant.

I. The declarations of the plaintiff, offered as part of the *res gestœ*, related to this act of working at the sand hill, but the act itself was not material as evidence to the issue. *Carlton* v. *Patterson*, 9 Foster 580.

II. The contract was signed by the president in behalf of the corporation. The engineer had no authority to make or modify the contract for grading the road. His declarations in reference to the subject of the contract are not evidence against the company. *Woods* v. *Banks*, 14 N. H. 101 ; *Towle* v. *Leavitt*, 3 Foster 374.

Nothing is stated in the case as to the time when the declarations offered in evidence were made. This is too indefinite to warrant the court in receiving them, even if the engineer had authority to make them and bind the company by them.

III. The interrogatory objected to as leading, in the deposition of Bacon, was admitted by the court in the exercise of its discretion, and it cannot be revised here, there appearing nothing in the case to warrant a doubt of the soundness of the discretion exercised, and no injustice appearing to the plaintiff. *Webster* v. *Clarke*, 10 Foster 255.

IV. The statement contained in the last sentence of the answer to the 27th interrogatory, was competent, as bearing upon the question raised upon the trial, whether the work between station 100 and the sand hill, was or not included in the written contract.

V. The objection to the 28th interrogatory, that it calls for an opinion of the deponent, is not correct in point of fact. It asks for a statement of fact as to the kind of earth.

But as the contract fixes the price of all earth work at 14 cents per cubic yard, and the jury have found that the work was done under the contract, the question was immaterial.

VI. The paper with the memorandum of estimates upon it was properly admitted, as having been assented to by the plaintiff, of which his receipt upon the other side of the paper, for money paid under the contract, was competent evidence. Under the circumstances, it must be presumed that he knew of the memorandum, and assented to it.

VII. The earth work between the sand hill and station 100 was as much a part of the earth work contemplated by the contract, to be paid for " at the rate of 14 cents per cubic yard, to be measured in excavating," as the filling in on any part of the line, it being necessary to the accomplishment of the work particularly specified in the contract.

SAWYER, J. The declarations of the plaintiff, made at the time of his commencing work at the sand hill, to the effect that the line had been changed from its original location to that point, were inadmissible as evidence in his favor, to prove such change. That the declarations of a party, giving character to and qualifying his acts, and deriving a credit from them, are admissible in favor of the party making them, as part of the *res gestæ*, when the acts themselves are material to the issue, is a familiar rule of evidence ; but it is applicable only when the *res* of which the declarations form a part — the acts which they tend to qualify and explain — are evidence in his favor, tending to prove the matter in issue. Here the fact qualified by the declarations is that the plaintiff worked at the sand hill, and this was a fact in no way material to the question at issue. That the fact was material, as being the foundation of the plaintiff's claim, constituting the service for which he seeks to recover compensation in this action, is quite apparent. But it is not material in the sense that as evidence it would tend to establish the point in controversy in favor of one party or the other.

The question at issue was, whether there had been a change

in the location of the line of the road. The controversy was upon that point. The act of the plaintiff, in doing the work at the sand hill, was equally consistent with the conflicting positions taken by the parties — by the plaintiff, that the grading was done upon a new line, substituted for the one originally established ; and by the defendants, that it was upon the line as originally established. No inference could be drawn either way from the fact that the plaintiff worked there. His work at the sand hill would have been performed alike, whether in doing that work he was grading the original line or a new one substituted for it. The acts of the plaintiff in this particular being no evidence upon the point in controversy, the accompanying declarations were not evidence, and were, therefore, rightfully excluded.

. The next question in the case arises upon the exception of the plaintiff to the ruling of the court in excluding the testimony of the witness as to statements made by the chief engineer of the company defendants, relative to the manner in which the work was to be done, during a negotiation for letting the job to the witness. It is not suggested by the case that any controversy existed between the parties in relation to the meaning of the contract, other than what was the particular subject matter to which it referred. Was it the road, as graded, ending in the deep pit in the swamp, station 100, spoken of in the contract, being there ; or was it the other line, running to the flag-staff in the plain, as station 100, and for which the line as graded was substituted ? When, therefore, it is stated in the case that this testimony was offered for the purpose of showing how the contract was afterwards made with the plaintiff, we understand that it was offered for the purpose of showing which line was contemplated and intended by the parties in the written contract. The offer was to prove by the witness " how the chief engineer said the road was to be built." Assuming that the statements of the engineer are to be treated as the declarations of the company, and that they were made under such circumstances as to render them competent as evidence, it was an offer to prove the declarations as to the manner in which the road was to be built, for

the purpose of showing where it was to be built.   It may readily be conceived that under some circumstances such declarations might have a very material bearing upon the question at issue, but no circumstances are stated in the case from which it thus appears.   It cannot be said that a statement of how, in what particular manner, the work of grading the road was to be done would necessarily tend to show whether the grading was to be done on one line or another.   There is nothing, therefore, in the case to show that the evidence offered would have borne upon the question at issue, and it must be considered as properly excluded.

The objection to the 28th interrogatory in the deposition of Bacon, that it is leading, does not seem to be well founded. The first branch of the interrogatory is not in the alternative form, "whether or not," but it is not of such character as to lead the witness to any proposition embodied in it as containing the desired answer.   Besides, it is merely introductory, and as such, entirely immaterial, unless followed by the other branch of the interrogatory ; and such questions may be leading.   It is also a satisfactory answer to the objection, if it exist, that the question has become immaterial by the finding of the jury. The question could have no relevancy to any point in the case, except the amount to be recovered upon the *quantum meruit*, in case the plaintiff should maintain his claim upon that ground. Under the instructions given, the jury have found that the plaintiff had no case upon that ground, and if the instructions were correct the whole inquiry is immaterial, and the verdict is not to be disturbed, even if it were apparent that the witness was led to an answer that would have been material upon that point.

The objection to the last clause of the answer to the 27th interrogatory, that it is incompetent, is not well taken.   One question raised at the trial was, whether the plaintiff was entitled to recover for the fill between station 100 and the sand hill, independent of the contract; and if it should be found that there had been no change of the line.   The whole of the answer to this interrogatory may have a bearing upon that question, and

no part of it more so than the last clause, to which the exception is taken. It may have a tendency to show, either that the plaintiff understood he was performing the work under his contract, or that he had received compensation for it as extra work.

The objection has been urged in the argument, that it is incompetent, on the ground that it was offered to prove the contents of a writing. The case does not find that the claim was presented in writing. On the contrary, it is to be understood that it was merely a claim made orally. The witness says, " I cannot recollect his," (the plaintiff's,) " precise words, but the above is the substance of his statements." Besides, it is not stated in the case that this was the ground of the objection taken at the trial. If not then stated as the ground of the objection, it cannot now be urged. If this had been suggested at the trial as the point of objection, it is to be presumed it would have been obviated by the production of the writing, or a proper explanation of its absence.

The exception to the 28th interrogatory, that it calls for the opinion of the witness as an expert, is not well founded. The subject to which it relates is not a matter of science, art or skill, but one in relation to which all the information that the interrogatory is calculated to elicit may be attained by common observation and experience. The interrogatory does not, therefore, ask for an opinion, but seeks for facts within the knowledge of the witness, and of which the knowledge may be obtained by common observation.

We think all the exceptions to the deposition of Bacon were properly overruled.

The paper containing the final estimates of the work done by the plaintiff, as made by the engineer, was proved by his testimony to be correct. It was competent to go to the jury, in connection with his testimony, as a memorandum made by him about the time of the transaction, and which he knew to be correct. *Haven* v. *Wendell*, 11 N. H. 112. The contract contemplates monthly estimates to be made out by the company's

engineer, of the amount of work done, for the purpose of limit-
ing the monthly payments, and expressly provides that when the
work is completed and accepted by the engineer, the balance
shall be paid ; not, however, upon an estimate made by the chief
engineer, or any other person designated as umpire, and thus
conclusive upon the plaintiff, but upon the actual amount of
work done.   The question, what was the amount of that work,
would be open to him, whatever might be exhibited by the esti-
mates, and whether they were made by the chief or some subor-
dinate engineer.   The case does not state what instructions were
given to the jury in reference to the character of the memoran-
dum as evidence.   No question, therefore, arises upon that
point.   If the question was at all material, it was competent for
the defendant to show what the amount of work was, by the
resident engineer or any other person having knowledge of the
fact ; and the paper containing estimates by the witness, which
he knew to be correct, made at the time of the transaction, was
evidence, in connection with his testimony, both of the fact that
such estimates were made, and of their correctness.   It is not,
however, upon the ground that the plaintiff had knowledge of
and assented to them.   No presumption of that kind can arise
from the fact that the estimates are found upon the back of the
receipt, signed by the plaintiff.   With the contents of a paper
signed by a party, and all that appears upon its face, he must be
presumed to be acquainted at the time of signing ; but there is
no ground for holding him chargeable with knowledge of what
appears upon the other side of the paper, and to which there is
no reference in the instrument to which he affixes his signature ;
nor is it to be presumed, in the absence of evidence, that the
memorandum was upon the paper when the receipt was signed.
It is sufficient in this case that the paper was competent to go to
the jury, whatever may have been the ground upon which it
was ruled in by the court.

   An exception is taken to the instructions of the court to the
jury, that unless they believed there had been a change of the
line, the plaintiff was not entitled to recover beyond the con-

tract price for the work done in the fill between station 100 and the sand hill. The case finds that in order to make the fill on that portion of the line up to station 100 included in the contract, it was necessary to fill in beyond station 100 to the sand hill, and it must be understood from the case that the instructions relate to the work done in this necessary fill. This, then, must be considered as incident to and part of the plaintiff's contract, and for this work he was to receive the stipulated price per cubic yard, measured in excavation. Whatever was necessary to be done beyond the limits of that portion of the road included within the contract, as the portion to be graded by the plaintiff in order to execute the grading specified, is as fully a part of his contract as though it were particularly specified. To grade the road implies the removal of earth from those places where cuts are to be made, and the filling in where embankments are required ; and if, in order to make the embankments, material must be brought from any point beyond the line of the road to be graded, the work necessary to accomplish this is stipulated to be done as part of the contract, though not particularly specified. The instructions were correct, and all the exceptions being overruled, there must be

<em>Judgment on the verdict.</em>